IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| **CRYSTAL GAIL OWENS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:13CV00079 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **CAROLYN W. COLVIN, ACTING** | ) | By: James P. Jones |
| **COMMISSIONER OF SOCIAL** | ) | United States District Judge |
| **SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Ginger J. Largen, Morefield & Largen, P.L.C., Abingdon, Virginia, for Plaintiff; Nora Koch, Acting Regional Chief Counsel, Region III, Jillian Quick, Assistant Regional Counsel, and Antonia M. Pfeffer, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

The plaintiff Crystal Gail Owens filed this action challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C.A. § 401-434 (West 2011 & Supp. 2013). Jurisdiction of this court exists under 42 U.S.C.A. § 405(g).

Owens filed an application with the Commissioner for DIB on March 3, 2011. After preliminary denials of her claim, she obtained a hearing before an administrative law judge ("ALJ") on February 20, 2013, at which Owens was represented by counsel and during which Owens testified along with a vocational expert, Cathy Sanders. On March 12, 2013, the ALJ issued a written decision finding that Owens was not disabled within the meaning of the Act. Owens requested review by the Social Security Administration's Appeals Council. The Appeals Council denied request for review on September 26, 2013, thereby making the ALJ's decision the final decision of the Commissioner. Owens then filed this action seeking judicial review of the Commissioner's decision.

The parties have filed cross motions for summary judgment, which have been briefed. Oral argument was held on May 14, 2014. The case is thus ripe for decision.

II

The plaintiff was 38 years old at the time of the hearing before the ALJ. She has a high school education with some college training in accounting. She was working as a cashier in April of 2010 when she became ill and was discovered to have coronary blockage and underwent heart bypass surgery. She has not worked since then, although at a post-operative examination by a cardiologist in August of

2012 she was found to be stable with no further evaluation necessary. (R. at 518-20.)[1] At the hearing before the ALJ her attorney asserted that the basis for her claimed disability was fibromyalgia.[2] It is contended by the plaintiff in this action that the ALJ erred in giving little weight to the opinions in this regard by Jennifer L. Quesinberry, M.D., Owens' primary care physician. In addition, it is argued that the ALJ erred by failing to evaluate the cumulative effect of all of Owens' impairments.

III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

---

[1] A later report by the cardiologist of his examination on April 24, 2013, which report was presented to the Appeals Council, states the same.

[2] In an opening statement at the hearing, the attorney advised the ALJ that "[i]n short, we have a claim for fibromyalgia, based on fibromyalgia. It's a controversial problem; there is not going to be objective evidence." (R. at 63.)

In assessing disability claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to Owens past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. § 404.1520(a)(4) (2013). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy.

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through the application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57

(4th Cir. 1976). It is not the role of the court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

I have carefully reviewed the record evidence and conclude that the ALJ's decision in this case is supported by substantial evidence and was reached through application of the correct legal standards.

IV

The administrative record shows the following facts.

In July of 2010, after her heart surgery, Owens visited Dr. Quisenberry, her long-time primary care physician, complaining of anxiety and panic attacks. She was prescribed Paxil and at her next visit she reported that the medicine made "a tremendous difference" and that "her mood was significantly better." (R. at 557.) A year later, in May of 2011, Owens was again seen by Dr. Quisenberry on her complaints that while "her mood is doing fairly well with the Paxil," she has had "muscle pain for the past year – particularly in her back, arms and legs." (R. at 614.) Dr. Quesinberry at that time diagnosed her with fibromyalgia.

Owens was referred by Dr. Quesinberry for mental health counseling at the local public mental health agency. Owens advised her counselor there that she had not done well emotionally since her heart surgery and that her anxiety was

intensified by her family's financial problems.[3] (R. at 631-634.) In later notes by the counselor, it was reported that "family stressors" contributed to Owens' mental health issues, including her husband's alcoholism. (R. at 734.)

In a report of a visit in August of 2011, Dr. Quisenberry noted that Owens' depression was stable. Dr. Quisenberry stated that she had "recommended that this patient apply for disability as I do feel with her underlying medical condition that she is unable to sustain work gainfully." (R. at 639.) A follow-up visit was scheduled in three months. At that visit, on November 8, 2011, Owens complained that she had chronic and severe left shoulder pain and "joint stiffness all over and myalgias [muscle pain]," although "the medication helps." (R. at 638.) Owens also reported to Dr. Quesinberry that she felt that her depression was "primarily situational due to financial difficulties." (R. at 638.)

In a visit on February 6, 2013, Owens delivered to Dr. Quesinberry a Fibromyalgia and Myofascial Pain Syndrome Functional Questionnaire from Owens' attorney, which Dr. Quesinberry completed. On this check-box form, Dr. Quesinberry checked most of the form's listed symptoms, including cognitive impairment, lack of coordination, depression, dizziness, unaccountable irritability, chronic fatigue syndrome, myofascial pain syndrome, difficulty communicating, TMJ dysfunction, chronic fatigue, and pain at all body locations. She also

---

[3] She told the counselor that she owed over $100,000 to medical providers resulting from her heart surgery, as well owing back taxes and other debts. (R. at 632.)

indicated that Owens' pain was daily and severe and that she could not work an eight-hour day. In answer to the question, "Identify the clinical findings, the laboratory and test results that show your patient's medical impairments," Dr. Quesinberry wrote simply, "clinical exam." (R. at 715.)

Owens was earlier referred by Dr. Quesinberry to Song Zang, M.D., a specialist in endocrinology and rheumatology, who saw her on April 6, 2012. Dr. Zang reported Owens to be a current smoker, five feet four inches tall, weighing 189.5 pounds, and complaining of pain "all over." (R. at 721.) Dr. Zang assessed her with fibromyalgia. He encouraged her to exercise regularly and told her that pain pills were "not the long term solution." (R. at 723.)

During the pendency of the administrative proceedings, and at the request of the state disability determination agency, Owens was seen and evaluated by Christopher M. Carusi, Ph.D., a clinical psychologist, on October 2, 2012. Dr. Carusi diagnosed Owens with "Adjustment Disorder with Depression, Chronic." (R. at 652.) He found that she was only mildly impaired in work-related mental activities. However, he estimated that Owens had a Global Assessment of Functioning ("GAF") score of only 40.[4]

---

[4] A GAF score is supposed to indicate an individual's overall level of functioning at the time of examination. A score of 40 would indicate a major impairment. *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32–34 (4th ed. 1994).

The ALJ found that while Owens was limited to a degree, her daily activities were inconsistent with her complaints of disabling limitations. He accorded little weight to Dr. Quesinberry's opinions, as well as to Dr. Carusi's assigned GAF score. On the other hand, he also afforded less weight to medical opinions that were unfavorable to Owens' claim of disability. He did not accept the opinions of two state agency psychological consultants, Louis Perrott, Ph.D., and Richard J. Milan, Ph.D., who opined after a review of the medical evidence that Owens' mental impairments were mild and thus non-severe. Instead, the ALJ determined that Owens had severe impairments of "fibromyalgia, depression, obesity, and adjustment disorder," among other things. (R. at 42.)

The ALJ also did not credit the opinions of state agency medical consultants (Robert McGuffin, M.D., and Steven Jackson, M.D.) who opined that Owens had the excertional ability to perform light work; instead, he accepted the opinion of medical consultant Michael Hartman, M.D., who found that she had the more limited ability to work at the sedentary level. Accordingly, the ALJ determined that Owens had the severe impairments of "cervical spine degenerative changes, left shoulder osteoarthritis, lumbar spine moderate discogenic changes and degenerative facet changes." (R. at 42.)

While the ALJ did rely in part on evidence of Owens' activities of daily life, that was not error since a Social Security claimant's routine non-work activities of

life may support a finding that a residual functional capacity to work exists. *See Yost v. Barnhart*, 79 F. App'x 553, 555 (4th Cir. 2003) (unpublished). These activities supported the ALJ's rejection of Dr. Quesinberry's generous view of her patient's limitations. Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano,* 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, if he sufficiently explains his rationale and if the record supports his findings. *See* 20 C.F.R. § 404.1527(d) (2013).

Accordingly, I find that the ALJ's decision was supported by substantial evidence.

## Cumulative Impairments.

Owens also argues that the ALJ erred by failing to analyze the combined effect of her several impairments.

I disagree. The ALJ expressly recognized in his decision his obligation to consider the plaintiff's impairments in combination as required by 20 C.F.R. § 404.1523 (2013). (R. at 41, 43.) The ALJ's lengthy and detailed decision fully reviewed and analyzed the extensive medical evidence in this case. While that evidence permitted a different resolution of the issues, I cannot find that the ALJ's determination was improper.

## V

For the foregoing reasons, the plaintiff's Motion for Summary Judgment is denied, and the defendant's Motion for Summary Judgment is granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

It is so **ORDERED**.

ENTER: May 22, 2014

/s/ James P. Jones
United States District Judge